**UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **CURTIS DWAYNE PRADIA,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No.  CIV-13-385-D** |
| | ) | |
| **TRACY MCCOLLUM,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## REPORT AND RECOMMENDATION

Petitioner, appearing pro se, filed in the Northern District of Oklahoma a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. No. 1), which was transferred to this Court for disposition (Doc. No. 4).   United States District Judge Timothy D. DeGiusti has referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C) (Doc. No. 7). Respondent has filed a Response and the transcript of the jury trial that resulted in the challenged conviction (Doc. Nos. 13, 15).   Petitioner has filed an Objection to Respondent's Response with supporting affidavit (Doc. Nos. 20, 21).  After reviewing the pleadings, exhibits, and transcripts, the undersigned recommends that the Petition be denied.

## BACKGROUND

In Payne County, Oklahoma, in Case No. CF-2010-285, the State charged Petitioner with attempted second-degree robbery after a former felony conviction.  Resp.

Ex. 9 (Doc. No. 13-9).[1]  The jury found Petitioner guilty, and the trial court sentenced him to thirty years' imprisonment.  Resp. Ex. 13 (Doc. No. 13-13).  Upon Petitioner's appeal, the Oklahoma Court of Criminal Appeals ("OCCA") affirmed the conviction.  OCCA Summ. Op. (Resp. Ex. 3 (Doc. No. 13-3)) at 1-5.  The trial court then denied Petitioner's application for postconviction relief, and the OCCA affirmed that decision.  Payne Cnty. Postconv. Order (Resp. Ex. 5 (Doc. No. 13-5)) at 1-6; OCCA Postconv. Order (Resp. Ex. 7 (Doc. No. 13-7)) at 1-2.

## PETITIONER'S CLAIMS

In this habeas action, Petitioner initially alleged: (1) Grounds One and Eight − the evidence was insufficient to support his conviction; (2) Grounds Two and Five − the trial court issued fundamentally defective instructions; (3) Ground Three − the prosecutor committed misconduct; (4) Ground Four − the trial court failed to follow proper procedures when addressing jury questions; (5) Ground Six − the sentence given Petitioner is constitutionally excessive; (6) Ground Seven − an accumulation of error rendered his trial unfair; (7) Ground Nine − the trial court failed to give a necessary jury instruction; (8) Ground Ten − trial counsel rendered ineffective assistance; and (9) Ground Eleven − appellate counsel rendered ineffective assistance.  *See* Pet. at 4-20.

However, after Respondent filed his Response, Petitioner "concede[d]" the arguments as to his Grounds Two, Four, Five, and Six.  Pet'r's Obj. (Doc. No. 20) at 1;

---

[1] Citations to the parties' pleadings and attached exhibits will refer to this Court's CM/ECF pagination.  Citation to the trial transcripts will refer to the original pagination.

Resp. at 10-18, 29-37. Accordingly, those claims are withdrawn and will not be considered.

As to the remaining Grounds, the Petition is vague and relies on broad assertions without explaining those assertions or alleging facts in support. *See* Pet. at 4-20. While that failure alone might warrant denial of the Petition, the undersigned notes that Petitioner states he exhausted each claim in his direct appeal and/or application for postconviction relief and that Respondent refers to those state-court briefs in addressing Petitioner's allegations. *See id.*; Resp. at 5-53. In an abundance of caution, the undersigned has construed the Petition as relying on the same facts and legal arguments Petitioner raised before the OCCA.

Conversely, the undersigned has *not* considered the contention, raised for the first time in an "Affidavit" submitted subsequently to the Petition, that Petitioner's trial attorney did not allow him to testify. *See* Pet'r's Aff. (Doc. No. 21). Petitioner has not sought to amend his Petition to add this argument as an independent habeas claim; instead, he states that he submitted the Affidavit to "expand the record," Pet'r's Obj. at 4. The Court, however, has not granted leave to expand the record in this case, and no such expansion is warranted in light of the undersigned's recommendation herein. *See* R. 2(b)(1) (prescribing that the petition must "specify all the grounds for relief available to

the petitioner"), 7(a) (prescribing that "if the petition is not dismissed" the court "may" direct expansion of the record), R. Governing § 2254 Cases in U.S. Dist. Cts.[2]

## THE RELEVANT FACTS DEVELOPED AT TRIAL

On April 21, 2010, Petitioner entered Rowdy Style Clothing and Accessories in Stillwater, Oklahoma, and purchased a $1.20 t-shirt. *See* Trial Tr. at 207-11. When the business owner, Ms. Tammy Law, opened the cash register, Petitioner said, "I am actually here to rob you." *Id.* at 207, 211. Ms. Law "got a real hot flash like [she] was nervous or scared" but responded "no, you're not." *Id.* at 211. Petitioner then "put [his hand] in his shirt as if it were a gun[.]" *Id.* Ms. Law stated "that's not even a gun," and Petitioner replied "yes, it is." *Id.* Ms. Law again insisted Petitioner did not have a gun, and he repeated, "[Y]es, I am here to rob you." *Id.* Ms. Law then shut the cash register without giving Petitioner any money. *See id.* Petitioner walked towards the door, stopping to ask about jean sizes and sports teams. *See id.* at 211-12, 215. Petitioner then left the store and sat down across the street, but Ms. Law remained "scared and nervous." *Id.* at 212-13. Finally, after speaking with her husband 15-20 minutes later, Ms. Law decided to call the police. *See id.* at 211-13.

---

[2] Further, Petitioner did not raise this issue in state court. *See* Pet'r's OCCA Direct Appeal Br (Resp. Ex. 1 (Doc. No. 13-1)); Pet'r's OCCA Postconv. Br. (Resp. Ex. 6 (Doc. No. 13-6)). Even if this claim had been properly presented, the Court may not grant relief upon such an indisputably unexhausted claim, and construing the Petition to include such a claim could preclude consideration of Petitioner's other, exhausted claims. *See Fairchild v. Workman*, 579 F.3d 1134, 1155 (10th Cir. 2009) (refusing to address petitioner's exhausted claims because "federal district courts may not adjudicate mixed petitions for habeas corpus, that is, petitions containing both exhausted and unexhausted claims" (internal quotation marks omitted)); 28 U.S.C. § 2254(b)(1).

Stillwater police officers arrested Petitioner shortly thereafter. Petitioner did not attempt to avoid the police, and he was respectful and cooperative. *See id.* at 239-40, 245-50. Petitioner denied he had attempted to rob Ms. Law, instead insisting he had told her the t-shirt price was "highway robbery." *Id.* at 242, 244. Petitioner did not have a firearm when he was arrested. *See id.* at 240.

## STANDARD OF REVIEW FOR HABEAS RELIEF

The Tenth Circuit has summarized the standard of review for evaluating state-court legal determinations challenged in federal court through a 28 U.S.C. § 2254 habeas proceeding:

> Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), we must apply a highly deferential standard in § 2254 proceedings, one that demands that state-court decisions be given the benefit of the doubt. If a claim has been "adjudicated on the merits in State court proceedings," we may not grant relief under § 2254 unless the state-court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). The phrase "clearly established Federal law, as determined by the Supreme Court of the United States," *id.* § 2254(d)(1), refers to the holdings, as opposed to the dicta, of the Court's decisions as of the time of the relevant state-court decision.

> Under the "contrary to" clause of § 2254(d)(1), we may grant relief only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts. And under the "unreasonable application" clause, we may grant relief only if the state court identifies the correct governing legal principle from the Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. An unreasonable application of federal law is different from an incorrect application of federal law. Indeed, a federal habeas court may not issue the writ simply because that court concludes in its

> independent judgment that the relevant state-court decision applied clearly
> established federal law erroneously or incorrectly.

*Dodd v. Trammell*, 753 F.3d 971, 982 (10th Cir. 2013) (alterations, citations, and internal quotation marks omitted).

Thus, to succeed on a habeas petition under 28 U.S.C. § 2254(d)(1), "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). Under § 2254(d)(2), in turn, the relevant question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

Finally, when a state appellate court has determined that a constitutional error is harmless, AEDPA also requires that deference be given to that decision. *See Davis v. Ayala*, 135 S. Ct. 2187, 2199 (2015). That is, on direct appeal, "'[b]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt.'" *Id.* (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)). However, "in a collateral review of a state court's criminal judgment," the federal court applies the "'more forgiving standard' first articulated in *Brecht v. Abrahamson*, 507 U.S. 619 (1993)." *Lockett v. Trammel*, 711 F.3d 1218, 1232 (10th Cir. 2013) (citation omitted). Under *Brecht*, "an error is deemed harmless unless it had a substantial and injurious effect or influence in determining the jury's verdict." *Id.*

(internal quotation marks omitted). "A substantial and injurious effect exists if a court finds itself in grave doubt about the effect of the error" on the jury's decision. *Id.* (internal quotation marks omitted); *see also Marshall v. Rudek*, 570 F. App'x 823, 826 (10th Cir. 2014). *Brecht* "subsumes the limitations imposed by AEDPA." *Davis*, 135 S. Ct. at 2199. In other words, to succeed on habeas review, a petitioner must show "he was actually prejudiced," "a standard that he necessarily cannot satisfy if a fairminded jurist could agree with the [state court's] decision" that the constitutional error "met the *Chapman* standard of harmlessness." *Id.*

ANALYSIS

## I.  GROUNDS ONE AND EIGHT

In both his first and eighth grounds for relief, Petitioner broadly and without explanation claims there was insufficient evidence to support his conviction. *See* Pet. at 4, 15. He states that the first ground was raised on direct appeal but that the eighth was only raised in his application for postconviction relief. *Id.* at 4, 15.

On direct appeal, Petitioner had alleged the State failed to prove the required element that property was taken "by force and fear." Pet'r's OCCA Direct Appeal Br. at 17. The OCCA rejected the argument, holding:

> [A] rational juror could conclude, beyond a reasonable doubt, that [Petitioner] demanded money from the complaining witness, but that she simply refused to comply with his demand. Such conduct is sufficient to constitute Attempted Second Degree Robbery.

OCCA Summ. Op. at 2 (citations omitted). In his application for postconviction relief, Petitioner—reframing the argument and asserting his appellate counsel had improperly

focused on the "force and fear" element—alleged the State did not prove he "had formed the specific intent to commit the crime." Pet'r's OCCA Postconv. Br. at 5, 14. In that connection, Petitioner argued that he "never attempted to take anything from the store" and "never performed a perpetrating act or act toward committing a crime." *Id.* at 3-6. The state trial court rejected this claim because it "already [had] been raised on the direct appeal of [Petitioner's] case." Payne Cnty. Postconv. Order at 2. On application for postconviction relief, the OCCA held "[a]ll issues that were previously raised and ruled upon in [Petitioner's] direct appeal are barred as *res judicata*, and all issues that could have been raised in previous proceedings but were not are waived . . . ." OCCA Postconv. Order at 1.

The undersigned assumes Petitioner intended to raise these same arguments in the unexplained Grounds One and Eight. Complicating matters procedurally, however, Petitioner's presentment of two insufficiency-of-the-evidence grounds suggests he views the underlying arguments in his direct appeal and his application for postconviction relief as distinct. And, the OCCA's opinion allows for the possibility that either the appellate court viewed the application for postconviction relief as reraising the same (and therefore decided) insufficiency-of-the-evidence claim as made on direct appeal, or that it viewed the application as asserting a new but previously unraised (and therefore waived) insufficiency-of-the-evidence claim.

The undersigned finds the OCCA's opinion is most reasonably construed as holding the postconviction argument urged the same insufficiency-of-the-evidence claim raised on direct appeal. In its ruling on direct appeal, the OCCA broadly construed

Petitioner's claim as challenging the sufficiency of the evidence generally, and the court broadly held that certain conduct that had been reasonably proved "is sufficient to constitute Attempted Second Degree Robbery." *See* OCCA Summ. Op. at 1, 2 (describing claim as: "The evidence is insufficient to support [Petitioner's] conviction."). Petitioner in seeking postconviction relief focused on a different element of the crime than had his attorney on direct appeal, but both arguments rely on the same essential facts. *Compare* Pet'r's OCCA Direct Appeal Br at 15-19, *with* Pet'r's OCCA Postconv. Br. at 3-6, *and* Pet'r's Payne Cnty. Postconv. Appl. (Resp. Ex. 4 (Doc. No. 13-4)) at 3-7. The state trial court interpreted the claims as being one and the same. *See* Payne Cnty. Postconv. Order at 2 (stating Petitioner's insufficiency argument had "been raised on the direct appeal"). The OCCA did not state that it disagreed with that interpretation.

In light of this history, the undersigned accepts the OCCA's opinion as declining to consider, pursuant to the doctrine of res judicata, the insufficiency-of-the-evidence claim raised in Petitioner's postconviction application.[3] With that interpretation, no procedural bar applies. "When a state court declines to review the merits of a petitioner's claim on the ground that it has done so already, it creates no bar to federal habeas review." *Cone v. Bell*, 556 U.S. 449, 466 (2009). Indeed,

---

[3] Respondent states that "the OCCA likely barred this claim as *res judicata*" but argues that Petitioner's postconviction insufficiency claim was "substantially different than the challenge to the evidence [on direct appeal]" and "the more appropriate ruling by the OCCA would have been to view Petitioner's insufficiency of the evidence claim as raised in his application for post-conviction relief as waived." Resp. at 38-41. Based on this conclusion, Respondent asks the Court to deny Ground Eight as procedurally defaulted. *Id.* at 38.

> [w]hen a state court refuses to readjudicate a claim on the ground that it has been previously determined, the court's decision does not indicate that the claim has been procedurally defaulted. To the contrary, it provides strong evidence that the claim has already been given full consideration by the state courts and thus is *ripe* for federal adjudication

*Id.* at 467; *see also Davis v. Workman*, 695 F.3d 1060, 1073 (10th Cir. 2012) ("A state court's invocation of res judicata does not . . . create a procedural bar to relief under § 2254."). Rather, given the OCCA's broad ruling, the undersigned finds that the OCCA's adjudication on the merits of Petitioner's insufficiency-of-the-evidence claim in his direct appeal (Ground One) encompasses and operates as an adjudication on the merits of Petitioner's insufficiency-of-the-evidence claim in his application for postconviction relief (Ground Eight).

### A. Clearly Established Law

As Petitioner argues, insufficiency-of-the-evidence claims typically present federal habeas courts with mixed questions of law and fact. *See* Pet'r's Obj. at 2; *see Hooks v. Workman*, 689 F.3d 1148, 1165 (10th Cir. 2012). Petitioner states that he bases his claim on challenges to the OCCA's factual determinations. *See* Pet'r's Obj. at 2, 4. But even upon liberal construction, Petitioner's allegations do not assert that the OCCA's factual findings are *incorrect*, let alone objectively unreasonable. *See* 28 U.S.C. § 2254(d)(2). Rather, Petitioner asserts a legal challenge that the evidence at trial did not support every element of the crime of attempted second-degree robbery. *See* Pet'r's OCCA Direct Appeal Br. at 15-19. This argument implicates 28 U.S.C. § 2254(d)(1) and requires the Court to consider whether the OCCA's decision was contrary to or involved an unreasonable application of clearly established federal law.

The clearly established federal law for insufficiency-of-the-evidence claims is that articulated in *Jackson v. Virginia*, 443 U.S. 307 (1979). *See Torres v. Mullin*, 317 F.3d 1145, 1151 (10th Cir. 2003). In *Jackson*, the Supreme Court held that the Due Process Clause requires a reviewing court to set aside a guilty verdict on direct appeal only if, after viewing all of the evidence in the light most favorable to the government, it determines "no rational trier of fact" could find the essential elements of the crime beyond a reasonable doubt. *Id.*; *Coleman v. Johnson*, 132 S. Ct. 2060, 2064 (2012); *McDaniel v. Brown*, 558 U.S. 120, 121 (2010). On habeas review, "[the] court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Cavazos v. Smith*, 132 S. Ct. 2, 4 (2011) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010)); *accord Parker v. Matthews*, 132 S. Ct. 2148, 2152 (2012) (discussing the "twice-deferential standard" that a federal habeas court must apply to *Jackson* claims that a state court has rejected on the merits).

### B. Elements of Attempted Second-Degree Robbery

The *Jackson* standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 309, 324 n.16. To convict Petitioner of attempted second-degree robbery in Oklahoma, the State had to prove Petitioner intended, and took some action to, (1) wrongfully (2) take (3) and carry away (4) another person's (5) personal property (6) from that person (7) by force or fear, but was prevented from completing the crime. *See* Okla. Unif. Crim. Jury

Instruction 2-11 (2d ed. 1996 & Supps.) (defining the elements of an attempt); Okla. Unif. Crim. Jury Instruction 4-142 (defining the elements for second-degree robbery); Okla. Unif. Crim. Jury Instruction 2-13 (combining the elements for attempt and the underlying crime); Trial Instruction Nos. 17, 20, 21 (Resp. Exs. 10, 11, 12 (Doc. Nos. 13-10, -11, -12)); Trial Tr. at 257.

    *C. Analysis*

    Petitioner does not dispute he bought a t-shirt from Ms. Law on April 21, 2010. Instead, Petitioner argues the evidence did not prove he used "force or fear" to perpetrate a crime. Pet'r's OCCA Direct Appeal Br. at 16-17. To support his argument, Petitioner relies on evidence showing that he did not avoid the police or otherwise try to get away, that he acted cooperatively, and that he did not have a firearm. *See id.* at 16-18. Petitioner also focuses on Ms. Law's allegedly inconsistent testimony. That is, Ms. Law testified she was scared, but she also: (1) admitted she did not believe Petitioner had a gun; (2) refused to give him any money; (3) conversed with Petitioner about jeans and sports teams *after* the robbery attempt; and, (4) waited 15-20 minutes before she called the police, and only then, after she spoke to her husband first. *See id.* at 16-17; *see also* Trial Tr. at 211-27. Ms. Law had also failed to mention in her police report that Petitioner had said he had a gun. *See* Trial Tr. at 218.

    Fatal to Petitioner's case, the jury heard all this evidence, and it is not this Court's role to "weigh conflicting evidence [or] consider the credibility of witnesses." *Glossip v. Trammell*, 530 F. App'x 708, 742 (10th Cir. 2013) (internal quotation marks omitted). Instead, the Court asks only whether the OCCA reasonably applied *Jackson* when it

found sufficient evidence to convict Petitioner. *See Hooks*, 689 F.3d at 1166. As noted above, the jury heard evidence that after Ms. Law opened the cash register, Petitioner told her he was robbing her and tried to convince her he had a firearm. *See supra* p. 4. Ms. Law was scared, but nevertheless shut the cash register drawer, thereby preventing Petitioner from taking the money. *See id.* The OCCA reasonably found that a rational juror could have concluded from this evidence that, regardless of Ms. Law's ultimate refusal "to comply with his demand," Petitioner's conduct of "demand[ing] money from" Ms. Law "is sufficient to constitute Attempted Second Degree Robbery." OCCA Summ. Op. at 2.

Petitioner has not established the OCCA unreasonably applied *Jackson* in finding this evidence sufficient to convict him of the crime at issue. Therefore, Petitioner's Ground One and Ground Eight do not warrant habeas relief.[4]

## II.     GROUND THREE

In his third proposition, Petitioner alleges the prosecutor made various constitutionally impermissible comments during the course of the trial. *See* Pet'r's OCCA Direct Appeal Br. at 23-26. In particular, Petitioner complains the State: (1)

---

[4] Even if the sufficiency-of-the-evidence claim asserted by Petitioner in his application for postconviction relief were to be construed as raising a separate basis of error than that raised and adjudicated in Petitioner's direct appeal, any such claim would have been subject to the OCCA's finding of waiver. *See* OCCA Postconv. Order at 1 (holding that "all issues that could have been raised in previous proceedings but were not are waived"). Because, as detailed below, the OCCA's waiver rule is an independent and adequate procedural bar, and Petitioner cannot establish any exception that would prevent a finding of procedural default, habeas relief would be unavailable on that separate issue. *See infra* Section III.

improperly referred to "other felony crimes in *voir dire*"; (2) made statements during closing argument that improperly shifted the burden of proof to Petitioner; and (3) made "improper and prejudicial statements" during closing argument intended to "invoke sympathy from the jury." *Id.* As discussed in detail below, the OCCA rejected these claims on direct appeal.

### A. Clearly Established Law

When a habeas petition is based on alleged prosecutorial misconduct, the federal court must determine whether the alleged misconduct implicates a specific constitutional right or the general due process right to a fair trial:

> Ordinarily, a prosecutor's misconduct will require reversal of a state court conviction only where the remark sufficiently infected the trial . . . to make it fundamentally unfair, and, therefore, a denial of due process. Nonetheless, when the impropriety complained of effectively deprived the defendant of a specific constitutional right, a habeas claim may be established without requiring proof that the entire trial was thereby rendered fundamentally unfair.

*Dodd*, 753 F.3d at 990 (omission in original) (citation and internal quotation marks omitted). When the invasion of a specific constitutional right is alleged, the Court reviews the error's harmfulness using the "substantial and injurious effect" standard outlined in *Brecht*. *Matthews v. Workman*, 577 F.3d 1175, 1186 (10th Cir. 2009). For all other allegations, Petitioner has the "high hurdle" to "show that the alleged misconduct sufficiently infected the trial to make it fundamentally unfair, and, therefore, a denial of due process." *Dodd*, 753 F.3d at 991 (alteration and internal quotation marks omitted).

*B. Analysis of Challenged Comments*

    1.  <u>Comment on Prior Felony Convictions</u>

Petitioner first complains the State improperly suggested during voir dire that Petitioner had multiple prior felony convictions. In his direct appeal brief, Petitioner did not allege that the referenced comment deprived him of a specific constitutional right but instead rested his claim on the general right to due process. *See* Pet'r's OCCA Direct Appeal Br. at 16. In his Objection filed in this Court, Petitioner alleges a violation of the specific constitutional rights to an impartial jury and to be free from self-incrimination. *See* Pet'r's Obj. at 8. Petitioner, however, does not explain how the prosecutor's comment about prior felony convictions involves Petitioner's right to be free from self-incrimination. Further, the undersigned finds that Petitioner's allegations do not implicate the Sixth Amendment's guarantee of an impartial jury. *See, e.g., Solis v. Standifird*, No. CIV-10-621-HE, 2011 WL 2144604, at *7-10, *7 n.21 (W.D. Okla. Jan. 7, 2011) (R. & R.) (rejecting petitioner's claim that prosecutor's questions regarding his prior convictions violated a specific constitutional right under the Sixth Amendment), *adopted*, 2011 WL 2143663 (W.D. Okla. May 31, 2011). Thus, the undersigned reviews Petitioner's challenge to the referenced comment under the high standard applicable to claims alleging a violation of the Fourteenth Amendment's Due Process Clause. *See id.*; *Dodd*, 753 F.3d at 991. The determination of whether the prosecutor's conduct rendered the trial fundamentally unfair is made in light of "all of the surrounding circumstances, including the strength of the state's case." *Malicoat v. Mullin*, 426 F.3d 1241, 1255 (10th Cir. 2005).

During voir dire, the prosecutor commented:

> This is a case [in] which the Defendant is charged with one felony crime, *and we'll certainly be receiving a lot more*. We will get some evidence about that and what this case is about.

Trial Tr. at 50 (Petitioner's preferred emphasis added). On direct appeal, the OCCA reviewed Petitioner's challenge for plain error, rejecting it because:

> The prosecutor's comment during *voir dire*, apparently referring to [Petitioner's] felony record, was indirect, brief, and isolated. Given the nature of the evidence, we fail to see how this comment could have affected the guilt-stage verdict, and therefore find no plain error.

OCCA Summ. Op. at 3.

"Oklahoma's formulation of the plain-error standard is virtually identical to the constitutional test for due process." *Hancock v. Trammell*, 798 F.3d 1002, 1011 (10th Cir. 2015). So when the OCCA "rejected [Petitioner's] claim under the plain-error standard, the decision effectively disallowed the possibility of a due process violation." *Id.* This Court must then defer to the OCCA's ruling unless it "unreasonably applied" the due process test. *Thornburg v. Mullin*, 422 F.3d 1113, 1125 (10th Cir. 2005) (alteration and internal quotation marks omitted).

The undersigned finds the OCCA reasonably applied the due process test. It was not an unreasonable application of federal law for the OCCA to conclude that this isolated comment did not render Petitioner's trial fundamentally unfair. *See Dodd*, 753 F.3d at 991 (holding that where the prosecutor's comment was "brief and isolated," the OCCA was not unreasonable in refusing to say the statement rendered the trial

fundamentally unfair, and that the criminal defendant's failure to object is relevant to assessment of fundamental unfairness).

### 2. Comment Allegedly Shifting Burden of Proof

The jury heard testimony that Petitioner told Stillwater police he was employed at a company and that he was carrying an identification badge from that company when officers arrested him. *See* Trial Tr. at 252-54. In closing, the State argued:

> One of the things that counsel brings up is something she brought out on cross-examination, and that was something that he told the officers when he was booked. I have a job at Mer-Cruiser. Why would she tell you that? Why would she want you to talk about that? Why would she want you to consider that he had a job . . . ?
>
> First of all did he prove - - was there any proof that he did have a job? . . . . Should you believe the lie - - a lie about his employment?
>
> If he had ever been employed there and had say an employment card from Mer-Cruiser, you know, it's common knowledge that Mer-Cruiser is closing. Had he been laid off[?]
>
> Now, if your liberty is depend[e]nt upon a jury believing, well, gee, he didn't really have any motive to rob someone because he had a job at Mer-Cruiser. What would you do? Would you just rely on something that you bring out in cross-examination or would you - - wouldn't common sense dictate that you would bring someone in from his shift to say, well, in April he was working my shift at Mer-Cruiser[?] We had a great job. He's a great guy.

*Id.* at 290-91. Petitioner's attorney objected on grounds that Petitioner had no obligation to prove anything, and the trial court sustained the objection. *See id.* at 291.

Petitioner asserted on direct appeal that the prosecutor's comment shifted the burden of proof. *See* Pet'r's OCCA Direct Appeal Br. at 24. The OCCA rejected this claim, holding that the prosecutor's remark, "referring to [Petitioner's] failure to present

evidence of his employment, was a proper comment on questions and argument first offered by defense counsel." OCCA Summ. Op. at 3. The OCCA then stated, "Moreover, when defense counsel lodged an objection, the trial court sustained it and the prosecutor moved on to a different subject." *Id.*

The OCCA's legal holding in the second sentence quoted is not express but reasonably appears to be a determination that the referenced comment caused no constitutionally prejudicial effect—i.e., that any error committed was ultimately harmless. The lack of certainty on this disposition "does not change [the Court's] deference." *Williams v. Trammell*, 782 F.3d 1184, 1999 (10th Cir. 2015). Under such circumstances, this Court's role is "still to evaluate the reasonableness of the OCCA's application of [federal law], considering the reasonableness of the theories that 'could have supported' the OCCA's decision." *Id.* (quoting *Richter*, 562 U.S. at 102). In that framework, the undersigned finds the OCCA reasonably could have found the State's comments to be constitutionally harmless.

At issue here is a specific constitutional right: the presumption of innocence. *See Dodd*, 753 F.3d at 990-91; *Morris v. Workman*, 382 F. App'x 693, 696 (10th Cir. 2010) ("Where prosecutorial misconduct directly affects a specific constitutional right such as the presumption of innocence, a petitioner may obtain relief by demonstrating that the constitutional guarantee was so prejudiced that it effectively amounted to a denial of that right." (internal quotation marks omitted)). Thus, the question is whether the OCCA unreasonably applied federal law when it held the error was harmless. As explained above, the Court applies the *Brecht* standard in analyzing this issue and asks whether

Petitioner has established that the error resulted in a "substantial and injurious effect or influence in determining the jury's verdict." *See supra* pp. 6-7.

As the OCCA noted, the trial court sustained Petitioner's objection and the State did not repeat the offending comments. Additionally, the trial court, the State, and Petitioner's attorney all informed the potential jurors that the State had the burden of proof. *See* Trial Tr. at 10, 58, 83-84. Then, the trial court orally instructed the sitting jurors that the State had the burden of proof, which would have cured the prosecutor's potentially erroneous suggestion to the contrary. *Id.* at 185; *see, e.g., United States v. Farmer*, 770 F.3d 1363, 1370-71 (10th Cir. 2014) (holding trial court's instruction that government had the burden of proof cured any error caused by prosecutor's comment that defendant could have tested evidence for fingerprints).[5] The Court presumes the jury followed its instructions. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000). Finding no substantial and injurious effect from the prosecutor's comment, and that the OCCA reasonably applied federal law when it held any error in making such comment was harmless, the undersigned recommends the Petition be denied with respect to this contention.

---

[5] If the jury was also provided a written instruction on this issue, it is not in the record before the Court.

### 3. Comment Regarding How the Jury Would Feel if in the Position of the Victim

Finally, Petitioner alleges that the prosecutor improperly invoked the jury's sympathy. *See* Pet'r's OCCA Direct Appeal Br. at 24-25. Specifically, Petitioner challenges the following statement:

> How would you feel you're a clerk, you are alone there in a store. You are a small woman and this large man comes in, leans over the counter and says I am here to rob you. And then he says I've got a gun. And he has his hand under his shirt.
>
> How would you feel? What would you expect he wanted her to feel?

Trial Tr. at 265. In rejecting this claim on direct review, the OCCA—pointing to the elements of attempted second-degree robbery—held that it found "nothing improper in this comment" because "the jurors were being asked to use their collective common sense to decide whether [Petitioner's] conduct showed an intent to place the victim in fear." OCCA Summ. Op. at 3.

Because no specific constitutional right is implicated, the Court must determine if the challenged comment deprived Petitioner of the due process right to a fundamentally fair trial. *See Hooper v. Mullin*, 314 F.3d 1162, 1172 (10th Cir. 2002) (holding allegation prosecutor improperly invoked the jury's sympathy did "not implicate a specific constitutional right" and the petitioner must show the statements "resulted in a fundamentally unfair proceeding"). As set forth above, the crime at issue required the State to prove that Petitioner intended to take Ms. Law's property "by force or fear," and Petitioner argued that Ms. Law did not believe he had a gun. Because the referenced

comment was relevant to the "fear" element and to Petitioner's argument that Ms. Law was not afraid, the OCCA reasonably concluded the comment presented no due process violation. *See Hanson v. Sherrod*, 797 F.3d 810, 841 (10th Cir. 2015) (noting that, while the Court does not condone a prosecutor's remarks intended to invoke the jury's sympathy, when comments refer to "relevant evidence for the jury to consider" they do "not amount to prosecutorial misconduct"), *petition for cert. filed*, No. 15-8396 (U.S. Feb. 26, 2016); *cf. Dodd*, 753 F.3d at 992 (noting that a prosecutor's closing arguments "'are seldom carefully constructed *in toto* before the event; improvisation frequently results in syntax left imperfect and meaning less than crystal clear.'" (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 646-47 (1974))).

## III.   GROUNDS NINE AND TEN

In Ground Nine, Petitioner alleges the trial court should have instructed the jury on "evidence of impeachment," and in Ground Ten he claims his trial counsel was ineffective for failing to request such an instruction. Pet'r's OCCA Postconv. Br. at 7-11. Respondent argues Grounds Nine and Ten are procedurally barred. Resp. at 38-53. The undersigned agrees.

### A.  OCCA's Finding of Waiver

In his direct appeal, Petitioner did not raise claims involving an impeachment instruction or trial counsel's ineffectiveness for failing to request such an instruction. *See* Pet'r's OCCA Direct Appeal Br. When Petitioner asserted those claims in his application for postconviction relief, the OCCA held the claims were "waived" because they "could

have been raised in previous proceedings but were not." *See* Pet'r's OCCA Postconv. Br. at 7-11; OCCA Postconv. Order at 1 (citing Okla. Stat. tit. 22, § 1086).

*B. Analysis of Procedural Bar*

When the OCCA has declined to consider a claim of error based on a state procedural rule, and that rule is found to be "independent and adequate," the claim is barred from a federal habeas court's collateral review unless certain rare exceptions are met. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

1. Independent and Adequate State Procedural Rule

"To be independent, the procedural ground must be based solely on state law." *Cole v. Trammell*, 755 F.3d 1142, 1159 (10th Cir. 2014) (internal quotation marks omitted). "To be adequate, the procedural ground must be strictly or regularly followed and applied evenhandedly to all similar claims." *Id.* (internal quotation marks omitted). If the rule is independent and adequate, a petitioner must show either cause and prejudice, or a fundamental miscarriage of justice, to overcome the default. *See Coleman*, 501 U.S. at 750.

The OCCA's waiver rule is based on Oklahoma state law and has long been recognized to be "'independent' for purposes of federal habeas review." *Cole*, 755 F.3d at 1159. With respect to the trial court's alleged failure to instruct on impeachment evidence (Ground Nine), there is no question that the OCCA's waiver rule is also "adequate" as that term is used for habeas review. *See id.*; *Smith v. Workman*, 550 F.3d 1258, 1267 (10th Cir. 2008) (citing Okla. Stat. tit. 22, § 1086).

Petitioner's ineffective trial counsel claim (Ground Ten), however, is more complicated. As to this type of claim, the Tenth Circuit has found the OCCA's waiver rule to be adequate only if certain conditions are met:

> [T]he Oklahoma bar will apply in those limited cases meeting the following two conditions: trial and appellate counsel differ; and the ineffectiveness claim can be resolved upon the trial record alone.

*English v. Cody*, 146 F.3d 1257, 1264 (10th Cir. 1998); *see also Spears v. Mullin*, 343 F.3d 1215, 1252 (10th Cir. 2003) (clarifying that for the second condition to be met, "either the defendant's ineffective-trial-counsel claim could be resolved solely on the trial record before the direct-appeal court or the defendant could have expanded the direct-appeal record to present his ineffective-assistance claim adequately").

Here, as noted above, a different attorney represented Petitioner on appeal, so the first *English* requirement is satisfied. *See English*, 146 F.3d at 1264. As to the second requirement, the trial court record would reflect any impeachment evidence Petitioner challenged and the absence of trial counsel's request for an instruction regarding that evidence. Accordingly, the second *English* requirement is also satisfied, as this claim could have been resolved solely on the basis of the trial court record that was before the OCCA on direct appeal. *See id.*; *Spears*, 343 F.3d at 1252. Because both *English* requirements are satisfied, the OCCA's procedural rule was adequate within the meaning of the procedural default doctrine. *See Spears*, 343 F.3d at 1252.

### 2. Exceptions to Procedural Bar

Therefore, the OCCA's waiver rule was independently and adequately applied to Petitioner with respect to both Grounds Nine and Ten. Federal habeas review of these

claims is barred absent Petitioner's showing of cause for the default and actual prejudice, or that a fundamental miscarriage of justice will result if Petitioner's claim is not considered. *See Coleman*, 501 U.S. at 750; *Hale v. Gibson*, 227 F.3d 1298, 1330 (10th Cir. 2000).

Liberally construing his argument, Petitioner alleges his appellate counsel—who failed to raise on direct appeal the claims in Grounds Nine and Ten—caused the waiver. *See* Pet'r's OCCA Postconv. Br. at 11-12. While appellate counsel's failure may establish cause for the default, it does not suffice to show actual prejudice. As detailed in the discussion of Ground Eleven, below, when Petitioner raised the omission of these claims in his application for postconviction relief, the OCCA expressly held that no different result would have been reached if the claims had been asserted on direct appeal, and that decision was not contrary to or an unreasonable application of federal law. *See* OCCA Postconviction Order at 2. Because Petitioner cannot establish ineffective assistance of counsel, Petitioner cannot show counsel's failure to raise Grounds Nine and Ten on direct appeal constitutes cause and prejudice for purposes of overcoming the procedural bar in state court. *See Sherrill v. Hargett*, 184 F.3d 1172, 1176 (10th Cir. 1999) (finding petitioner's appellate attorney was not ineffective under *Strickland*, and accordingly holding, "Petitioner's ineffective assistance of appellate counsel claim therefore has no merit and cannot constitute 'cause' for his procedural default in state court.").

Petitioner can also overcome the procedural bar if he shows a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 750. But to do so, Petitioner must make

a "'credible' showing of actual innocence." *Frost v. Pryor*, 749 F.3d 1212, 1231 (10th Cir. 2014). That is, he must 'support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* at 1232 (internal quotation marks omitted). Petitioner continues to assert he did not intend to rob Ms. Law, but he has not described any evidence of his factual innocence that was not presented at trial. Accordingly, the undersigned finds Petitioner cannot establish a fundamental miscarriage of justice and recommends the Court find Grounds Nine and Ten procedurally barred.

### C. Petitioner's Request for an Evidentiary Hearing

Noting that the OCCA disposed of the claims at issue in Grounds Nine and Ten on the basis of waiver rather than on their merits, Petitioner requests an evidentiary hearing on those claims. *See* Pet'r's Obj. at 2-3. However, because the OCCA's merits-based decision on Petitioner's ineffective assistance of appellate counsel claim (Ground Eleven) effectively prohibits review of Petitioner's procedurally barred claims (Grounds Nine and Ten), the Court need not and should not conduct such a hearing. *See Thacker v. Workman*, 678 F.3d 820, 836 (10th Cir. 2012) ("Because, however, [the petitioner's] claim is procedurally barred, the district court did not err in failing to conduct an evidentiary hearing."); *see also Pavatt v. Trammell*, CIV-08-470-R, 2014 WL 1745019, at *57 (W.D. Okla. May 1, 2014) ("Because the Court has procedurally barred these claims due to Petitioner's failure to present them to the OCCA until his second post-

conviction application, an evidentiary hearing on these claims is clearly unwarranted."),

*appeal docketed*, No. 14-6117 (10th Cir. June 3, 2014).

## IV.  GROUND ELEVEN

In Ground Eleven, Petitioner alleges his appellate counsel was ineffective for failing to raise the claims underlying Grounds Nine and Ten on direct appeal, and for "inadequately argu[ing]" the insufficiency of the evidence claim.  Pet'r's OCCA Postconv. Br. at 11-12.  The OCCA considered Petitioner's ineffective assistance of appellate counsel claim on the merits and denied relief, holding that Petitioner could not demonstrate prejudice resulted from his appellate counsel's conduct: "Petitioner's jury found him guilty beyond a reasonable doubt and he has not established why the outcome of his trial or direct appeal should have been different."  OCCA Postconv. Order at 2.

### A.  Clearly Established Law

Under clearly established federal law, Petitioner must demonstrate his attorney's performance was both deficient and prejudicial in order to establish that he was deprived of his right to counsel.  *See Strickland v. Washington*, 466 U.S. 668, 690-91 (1984).  An attorney's performance is "deficient" if it falls "outside the wide range of professionally competent assistance."  *Id.* at 690.  "[P]rejudice" involves "a reasonable probability that, but for counsel's unprofessional errors, the result of the [direct appeal] would have been different."  *Id.* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*  As the Supreme Court has held:

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if

counsel acted differently.  Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different.  This does not require a showing that counsel's actions more likely than not altered the outcome, but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case.  The likelihood of a different result must be substantial, not just conceivable.

*Richter*, 562 U.S. at 111-12 (citations and internal quotation marks omitted).  Finally, when applying both *Strickland* and § 2254(d), the Court's review is "'doubly' deferential."  *Hanson*, 797 F.3d at 826 (quoting *Richter*, 562 U.S. at 105).

*B. Analysis*

When, as here, the OCCA addressed an ineffective assistance of appellate counsel claim on the merits and "'concludes, in essence, that it would not have reached a different outcome had the appellate counsel raised the omitted claims on direct appeal, the Court can already be assured that appellate counsel's conduct was not prejudicial under *Strickland*."  *Daubert v. McCollum*, No. CIV-14-555-D, 2015 WL 1859117, at *1, 7 (W.D. Okla. Apr. 22, 2015) (alterations omitted) (quoting *Jackson v. Martin*, No. CIV-12-702-W, 2013 WL 5656105, at *1, 4 (W.D. Okla. Oct. 15, 2013) (collecting cases), *appeal dismissed*, 572 F. App'x 597 (10th Cir. 2014)).  And, indeed, it was reasonable in this instance for the OCCA to conclude as such.

Petitioner argues his appellate counsel should have challenged on direct appeal the trial court's failure to instruct the jury regarding impeachment evidence, as well as trial counsel's failure to request the instruction.  Pet'r's OCCA Postconv. Br. at 7-12. Underlying Petitioner's argument is his assertion that Ms. Law gave inconsistent evidence when she failed to state in her police report that Petitioner claimed to have a

firearm, but testified to such during trial. *Id.* at 7-9. Petitioner believes the trial court should have instructed the jury that:

> Evidence has been presented that on some prior occasion [Ms. Law] (made a statement)/(acted in a manner) inconsistent with . . . her testimony in this case. This evidence is called impeachment evidence and it is offered to show that [Ms. Law's] testimony is not believable or truthful. If you find that (a statement was made)/(the acts occurred), you may consider this impeachment evidence in determining what weight and credit to give the testimony of [Ms. Law]. You may not consider this impeachment evidence as proof of innocence or guilt. You may consider this impeachment evidence only to the extent that you determine it affects the believability of [Ms. Law], if at all.

Okla. Unif. Crim. Jury Instruction 9-20.

Under Oklahoma law, however, the *omission* of a fact from a statement does not necessarily make the statement *inconsistent* with trial testimony such than an impeachment instruction is required. *See Lee v. State*, 738 P.2d 173, 175-76 (Okla. Crim. App. 1987) (holding trial court did not err in failing to give jury instruction on impeachment where "the attempt at impeaching the security guards concerned a matter of omission in the reports, not contradictory statements"). Thus, the OCCA reasonably could have found that Ms. Law's testimony that she believed Petitioner had a gun, despite not having stated that belief in the police report, was not an inconsistent statement that required the giving of Oklahoma Uniform Criminal Jury Instruction 9-20. Further, in light of the trial court's instructions regarding the weighing of witness testimony, and the substantial evidence of Petitioner's guilt detailed above, the record does not support a conclusion that but for the failure to request the impeachment instruction it is "reasonably likely" that the result of the proceeding would have been different. *See* Resp., Ex. 16

(Doc. No. 13-16) (trial court's instruction to the jury regarding the weighing of witness testimony, Okla. Unif. Crim. Jury Instruction 10-8); *Richter*, 562 U.S. at 111-12; *Gardner v. Galetka*, 568 F.3d 862, 884-85 (10th Cir. 2009) (denying habeas relief on ineffective-assistance-of-counsel claim where erroneous jury instruction "could have had no effect on the outcome"); *Hale*, 227 F.3d at 1323-25 (holding that state appellate court's denial of relief on ineffective-assistance claim was not unreasonable where the petitioner failed to show "a reasonable probability" that the jury would have returned a different verdict had improper jury instruction not been given).

For these reasons, the undersigned finds the OCCA reasonably applied *Strickland's* prejudice prong when it held Petitioner had not established the outcome of direct appeal would have been different had appellate counsel raised these claims. *See Parson v. Keith*, 310 F. App'x 271, 273-74 (10th Cir. 2009) (finding that where the OCCA applied *Strickland* to hold that appellate counsel's alleged errors would not have affected the direct appeal's outcome, the court must "defer to the OCCA's determination"). Habeas relief should be denied with respect to the Petition's Ground Eleven.

RECOMMENDATION

Petitioner effectively withdrew Grounds Two, Four, Five, Six, and Seven, and the OCCA's rejection of Grounds One, Three, Eight, and Eleven was not contrary to or an unreasonable application of federal law. Finally, Petitioner's Grounds Nine and Ten are procedurally barred. For these reasons, the undersigned recommends the Court deny Petitioner's Petition.

## NOTICE OF RIGHT TO OBJECT

The undersigned advises the parties of their right to object to this Report and Recommendation no later than May 31, 2016, under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). The undersigned further advises the parties that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation disposes of all matters referred to the undersigned Magistrate Judge and terminates the referral.

Entered this 10th day of May, 2016.

CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE